## UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| In re: | : | CHAPTER 11 |
|  | : |  |
| LOVE RENOVATIONS & DESIGN, LLC | : |  |
|  | : | NO.: 22-12011-MDC |
| Debtor. | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |

### DEBTOR'S AMENDED PLAN OF REORGANIZATION

This Amended Plan of Reorganization ("Plan") is presented to you to inform you of the proposed plan for restructuring the debt and liquidating the assets of Love Renovations & Design, LLC ("Debtor"), and to seek your vote to accept this Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan.  To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY _____, 2023AT ___:___ ___.M. EST.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY _____, 2023.  THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: WEIR GREENBLATT PIERCE LLP, 1339 CHESTNUT STREET, SUITE 500, PHILADELPHIA, PA  19107 (ATTN: JEFFREY S. CIANCIULLI, ESQUIRE).**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR_____,  2023AT  ___:___  ___.M.  OR  AS  SOON THEREAFTER  AS  THE  COURT  DIRECTS   AND  WILL  BE  HELD VIRTUALLY  IN  COURTROOM  NO.  3  AT  THE  UNITED  STATES BANKRUPTCY  COURT,  EASTERN  DISTRICT  OF  PENNSYLVANIA, ROBERT  F.C.  NIX  COURTHOUSE,  900  MARKET  STREET, PHILADELPHIA, PA  19107.  INSTRUCTIONS FOR ATTENDANCE AT THE VIRTUAL HEARING MAY BE OBTAINED FROM COUNSEL TO THE  DEBTOR  OR  AT  THE  COURT'S  WEBSITE  AT WWW.PAEB.USCOURTS.GOV**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

Respectfully submitted,

WEIR GREENBLATT PIERCE LLP

By: /s/ *Jeffrey S. Cianciulli*
    Jeffrey S. Cianciulli, Esq.
    1339 Chestnut Street, Suite 500
    Philadelphia, PA  19107
    (215) 665-8181
    jcianciulli@wgpllp.com
    *Counsel to Debtor*

Dated:  December 22, 2022

## <u>SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS</u>

Pursuant to Bankruptcy Code sections 1129, 1190, and 1191, the Debtor proposes this Plan, which, subject to Confirmation, will form a binding contract between the Debtor and all Holders of Claims or Interest and other parties in interest that shall govern, among other things, the treatment and/or payment of Allowed Claims or Interests. Capitalized terms used in this Plan and not otherwise defined have the meanings ascribed to such terms in the definitions section of this Plan.

This Plan is designed to permit Debtor to resolve all Claims and Interests, whether manifested or unmanifested, of all Holders of Claims or Interests, whether known or unknown. This Plan provides for the full payment of administrative and priority claims over the lifetime of this Plan. Specifically, this Plan is a chapter 11 plan of reorganization that accomplishes a number of beneficial outcomes for the Debtor and its creditors, including, among other things:

1. **Emergence from Chapter 11**: Except as otherwise provided in this Plan, the Reorganized Debtor shall continue to exist on and after the Effective Date as a limited liability company, with all of the powers of such an entity under the laws of the state where incorporated and as provided under the Debtor's governing documents in effect immediately prior to the Effective Date. Moreover, all Assets comprising the Estate shall vest in the Reorganized Debtor free and clear of all Liens, Claims, charges, and other encumbrances. Specifically, upon the Effective Date, the following assets, among others, shall revest in the Reorganized Debtor: (i) the Debtor's Cash and Cash equivalents; (ii) the Debtor's leased or owned real property, to the extent not sold pursuant to this Plan, and the equipment, furniture and fixtures contained therein; and (iii) all Causes of Action including, among others, all Avoidance Actions. Further, the Reorganized Debtor shall not assume any Claims or liabilities of the Debtor, except as specifically provided herein, which Claims or liabilities shall be discharged as against the Reorganized Debtor in accordance with the terms of the Plan.

2. **Sale of Real Property**: On the Effective Date, or as soon thereafter as reasonably practicable, the Reorganized Debtor shall consummate the sale of the Real Estate and the proceeds of the sale, upon closing, shall distributed from such closing and otherwise be made available to the Reorganized Debtor to fund Distributions to Holders of Allowed Claims as provided in this Plan.

Copies of this Plan and all other pleadings that have been or will be filed in the Chapter 11 Case are available for review without charge by contacting the Debtor's counsel at **WEIR GREENBLATT PIERCE LLP, 1339 CHESTNUT STREET, SUITE 500, PHILADELPHIA, PA  19107 (ATTN: JEFFREY S. CIANCIULLI, ESQUIRE)** or via e-mail at jcianciulli@wgpllp.com.

ALL HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS AS TO THE U.S. FEDERAL, STATE, LOCAL, NON-U.S., NON-INCOME, AND OTHER TAX CONSEQUENCES OF THE PLAN.

Subject to any restrictions on modifications as set forth under the Bankruptcy Code and the Bankruptcy Rules, the Debtor expressly reserves the right to alter, amend or modify this Plan one or more times before its Substantial Consummation.

# ARTICLE 1
## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.1.    Nature of the Debtor's Business and Operations

The Debtor, formed in 2019, is a Limited Liability Company with its principal place of business located at 481 Bethel Mill Road, Sewell, NJ 18080. The Debtor is the owner of a residential building located at 1533 South 4th Street, Philadelphia, PA 19147 ("Real Property"). The Real Property is the sole significant asset of the Debtor and was purchased in 2019 and thereafter fully rehabilitated by the Debtor with the intention of selling the Real Property for a profit. The Debtor also owns minor items of furniture located within the Real Property and has $25.00 in cash in its DIP account.

### 1.2.    History of Business Operations of the Debtor

The Debtor formed in 2019 with the sole purpose to purchase and rehabilitate the Real Property. Prior to the Petition Date, the Debtor entered into an exclusive listing agreement with eXp Realty, LLC, a real estate agent, for the marketing and sale of the Real Property. Following the Petition Date, the Debtor engaged, with Court approval, eXp Realty, LLC to continue its efforts to find a purchaser of the Real Property. Pursuant to the terms of the listing agreement, eXp agreed to perform marketing services for the Debtor with respect to the Real Property, in return for a commission equal to five (5%) of the gross sale price of the Real Property.

### 1.3    Filing of the Debtor's Chapter 11 Case.

On August 1, 2022, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the United States Bankruptcy Court for the Eastern District of Pennsylvania ("Bankruptcy Court"). The Real Property is located within the jurisdiction of the Bankruptcy Court.

### 1.4.    Legal Structure and Ownership.

The Debtor is a limited liability company organized and existing under the laws of the state of New Jersey. Membership interests are owned by Margaret Love and Richard Dicintio, each owning 50% of the issued and outstanding membership interests in the Debtor.

**1.5.** **Debtor's Assets.**

The Real Property, is the primary asset owned by the Debtor and the Real Property is currently under agreement of sale for the total purchase price of $530,000.00 with a "seller assist" of $10,000.00..  The Real Property had recently been appraised by the first priority mortgage holder at approximately $530,000.00.

**1.6.** **Debtor's Liabilities.**

The following creditors maintain Claims secured by a mortgage, tax or judgment lien against the Real Property:

1.  City of Philadelphia, $2,460.86 for unpaid real estate taxes and $938.77 for unpaid water and sewer debt for a total of $3,399.63.  The Debtor believes the City of Philadelphia to be the first priority secured creditor to the extent of its claim for such unpaid obligations.

2.  Lending Home Funding Corporation (or its assignee), $371,676.79 for unpaid balance of loan reduced to a judgment in the Court of Common Pleas of Philadelphia County.  The Debtor believes that Lending Home Funding Corporation maintains a second priority secured claim against the Real Property and that it is oversecured by the value of the Real Property.

3.  Eric Hebert, $54,770.69 for unpaid balance of a loan to the Debtor, which has been reduced to judgment entered in the Court of Common Pleas of Philadelphia County.  The Debtor believes that Eric Hebert maintains a third priority secured claim against the Real Property and that he is oversecured by the value of the Real Property.

**1.7.** **Current and Historical Financial Conditions.**

The Debtor has generated no income during the course of its operations and, other than in connection with the purchase and rehabilitation of the Real Property, has generated no substantial liabilities other than those detailed on the Debtor's official bankruptcy schedules.  The Debtor's relevant financial performance following the Petition Date is detailed in the Debtor's periodic operating reports filed since the commencement of the Debtor's Bankruptcy Case.

**1.8.** **Events Leading to the Filing of the Bankruptcy Case.**

Despite the Debtor's best efforts to sell the Real Property prior to the filing of the Bankruptcy Case, the Debtor was unable to consummate a sale.  The Debtor entered into an agreement of sale for the Real Property in April, 2022 in the amount of $609,000.00, which would have been sufficient to pay all obligations of the Debtor and return a profit to the Debtor.  Unfortunately, that agreement of sale was terminated during the applicable due diligence period by the potential purchaser.  Shortly thereafter, the market for real estate in

the area where the Real Property is located changed dramatically and negatively.  The Debtor was unable to make payments to its primary secured creditor Lending Home Funding Corporation and, despite efforts of the parties to find an amicable resolution, Lending Home Funding Corporation obtained a judgment in mortgage foreclosure on or about July 13, 2021.  The Real Property was listed for judicial foreclosure sale in August, 2022 and the Debtor filed its Bankruptcy Case to effectuate a stay of the sheriff sale of the Real Property and afford all parties in interest an opportunity to realize the full value of the Real Property.

### 1.9.   <u>Events During the Bankruptcy Case.</u>

At the outset of the Bankruptcy Case, the Debtor filed it schedules and statement of financial affairs and retained professionals in connection with the Bankruptcy Case and to sell the Real Property.

Important events during the Debtor's bankruptcy case, may include:

- On August 15, 2022, the Debtor filed applications to retain Weir Greenblatt Pierce LLP as its bankruptcy counsel and eXp Realty, LLC as its broker for the sale of the Real Property [D.I. 15 and 16], which retentions were approved by orders entered by the Bankruptcy Court on September 6, 2022 [D.I. 31 and 32]. In addition to the professionals retained by the Debtor, on August 2, 2022, the U.S. Trustee appointed Leona Mogavero, Esquire to serve as the Debtor's Subchapter V Trustee.

- The Debtor has filed monthly operating reports for August and September, 2022 [D.I. 37 and 41].

- The Debtor attended, and the U.S. Trustee concluded the meeting of creditors on September 14, 2022.

- The Debtor executed and delivered an Agreement of Sale for the Real Property, subject to Bankruptcy Court approval, on December 7, 2022, with a closing date by April 28, 2023.

### 1.10.   <u>Projected Recovery of Avoidable Transfers</u>

The Debtor does not currently intend to pursue preference, fraudulent conveyance, or other avoidance actions.

## ARTICLE 2
## <u>THE PLAN</u>

The Debtor's Plan must describe how its Creditors will be paid.  Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment.  For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired.  A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled.  If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote.  A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.  Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan.  A class that is not impaired is deemed to accept the Plan.

**2.1**.   **Unclassified Claims.**

Certain types of Claims are automatically entitled to specific treatment under the Code.  For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan does not place the following Claims in any class:

A.     Administrative Expenses

The Debtor must pay all Administrative Expenses in full.   If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense.   Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order.  If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

All requests for payment of Administrative Expense Claims must be filed and served on the Debtor or Reorganized Debtor, as applicable, pursuant to the procedures specified in the Confirmation Order and notice of entry of the Confirmation Order, if applicable, no later than thirty (30) days after the Effective Date (the "Administrative Expense Bar Date"). Holders of Administrative Expense Claims that are required to, but do not, file and serve a request for payment of such Administrative Expense Claims against the Debtor or its property and such Administrative Expense Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be Filed and served on the Debtor or Reorganized Debtor, as applicable, and the requesting party no later than sixty (60) calendar days after the Effective Date. Notwithstanding the foregoing, no request for payment of an Administrative Expense Claim need be filed with respect to a previously allowed Administrative Expense Claim.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Administrative Tax Claim | $0.00 | Payment through the Plan as follows: Payment upon sale of Real Property |
| Professional fees, as approved by the Bankruptcy Court | By agreement with the Debtor, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim upon the sale of the Real Property, or as soon thereafter as practicable. | After Bankruptcy Court approval, Payment through the Plan as follows: Payment upon sale of Real Property |
| Trustee | The Subchapter V Trustee shall be paid for services rendered in this by way of a Professional Fee Claim upon application to the Bankruptcy Court and subject to the Sale of the Real Property | Upon application under § 330 and after Bankruptcy Court approval, payment through the Plan as follows: Upon Sale of the Real Property |
| TOTAL | $30,000 (Estimated) | |

B.      Priority Tax Claims.

Each Holder of an Allowed Priority Tax Claim, if any[1], shall receive in full satisfaction of such Allowed Priority Tax Claim (a) payment in Cash equal to the unpaid portion of such Allowed Priority Tax Claim, to be paid in regular installments paid over a period not exceeding 3 years from the order of relief; or (b) Cash in an amount agreed to by the Reorganized Debtor and such Holder. Such payments to Holders of Allowed

[1] The Debtor estimates that there are no Priority Tax Claims.

Priority Tax Claims shall be paid by the Reorganized Debtor from Cash on Hand on the Effective Date of the Plan or, subject to the consent of the Exit Facility Lender, funds available under the Exit Facility.

**2.2     Classes of Claims and Equity Interests.**

The following chart provides a summary of treatment of each Class of Claims and Equity Interests (other than Administrative Expense Claims, Priority Tax Claims, Professional Claims, and the DIP Lender Claims) and an estimate of the recoveries of each Class. The treatment provided in this chart is for informational purposes only and is qualified in its entirety by this Article of the Plan.

| Class | Estimated Allowed Claims | Treatment and Voting Status | Estimated Recovery to Holders of Allowed Claims |
|---|---|---|---|
| **Class 1—** City of Philadelphia | $3,399.63 | Unimpaired Deemed to Accept | $3,399.63 |
| **Class 2—** Lending Home Funding Corporation | $371,679.79 | Impaired Entitled to Vote | $371,679.79[2] |
| **Class 3—** Eric Hebert | $54,770.69 | Impaired Entitled to Vote | $54,770.69[3] |
| **Class 3—** Unsecured Claims | $77,694.00 | Impaired Entitled to Vote | UNKNOWN |
| **Class 4—** Equity Interests | n/a | Impaired Deemed to Reject | UNKNOWN |

**2.3.     Estimated Number and Amount of Claims Objections.**

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan.  If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.  The Debtor does not currently intend to object to any claims in light of the agreements reached with certain of its secured creditors regarding the amount of such claims.

---

[2] Lending Home Funding Corporation has agreed to accept $371,679.79 as payment in full of its claim.

[3] Eric Hebert has agreed to accept $54,770.69 as payment in full of his claim.

### 2.4.     Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract.  The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval.  The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

On the Effective Date, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed before the date of the order confirming the Plan.  Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases.  If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

**The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract Is December 30, 2022**.  Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.

### 2.5.     Means for Implementation of the Plan.

The Plan will be funded by the proceeds realized from the sale of the Real Property, which is under contract and is expected to be sold on or shortly following the occurrence of the Effective Date of this Plan.  The proceeds of the sale, following ordinary and necessary closing costs, including the broker fee to eXp Realty, LLC, will be distributed from the closing to the City of Philadelphia, Lending Home Funding Corporation, Eric Hebert and to the holders of allowed Administrative Expense Claims.

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, the Real Property, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor.  To be clear, the Real Property shall remain subject to the secured claims described in this Plan and upon sale of the Real Property, such liens shall attach to the proceeds of the sale in the order of priority immediately preceding the Petition Date and such claims shall be paid in accordance with the Plan.

### 2.6.     Payments.

Payments to Creditors provided for in the Plan will be made by the Debtor as otherwise provided in the Plan or in the order confirming the Plan.

### 2.7.     Post-Confirmation Management.

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:  Margaret Love, Manager and Member.  Margaret

Love will receive no compensation for such services.

### 2.8. <u>Tax Consequences of the Plan.</u>

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

Pursuant to Bankruptcy Code section 1146(a), the issuance, transfer or exchange of notes or equity securities under or in connection with this Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated herein, or other transactions, contemplated under this Plan shall not be subject to any stamp, real estate transfer, mortgage or other similar tax.

### ARTICLE 3
### <u>FEASIBILITY OF PLAN</u>

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1. <u>Ability to Initially Fund Plan</u>.

The Debtor believes that the Debtor will have enough cash immediately following the sale of the Real Property to pay all the Claims and expenses that are entitled to be paid under the Plan in accordance with their respective priority.

### ARTICLE 4
### <u>LIQUIDATION ANALYSIS.</u>

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation.  A liquidation analysis is attached hereto as Exhibit A.

### ARTICLE 5
### <u>DISCHARGE.</u>

As**,** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts as provided in sections 1181, 1191 and, if applicable, 1192  of this title.

## ARTICLE 6
## GENERAL PROVISIONS.

### 6.1.    Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first.  Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2.    Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3.    Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4.    Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**6.5.** **Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**6.6.** **Modification of Plan.**

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**6.7.** **Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

**6.8** **Conditions Precedent to Confirmation**

Unless duly waived as provided for by this Plan, confirmation shall not occur until the Confirmation Order is entered by the Bankruptcy Court.

**6.9** **Conditions Precedent to the Effective Date**

The Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived as provided by this Plan: (i) the Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably satisfactory to the Debtor and the DIP Lender; and (ii) the Confirmation Order shall have become a Final Order.

**6.10** **Establishing the Effective Date**

The calendar date to serve as the Effective Date shall be a Business Day of, on or promptly following the satisfaction or waiver of all conditions to the Effective Date,

which date will be selected by the Debtor. On or within one (1) Business Days of the Effective Date, the Debtor shall file and serve a notice of occurrence of the Effective Date. Such notice shall contain, among other things, (i) the Administrative Expense Bar Date, (ii) the Professional Claims Deadline, and (iii) the deadline to file a proof of claim relating to damages from the rejection of any Executory Contract by the terms of this Plan.

### 6.11  <u>Waiver of Conditions</u>

The conditions to the Effective Date set forth herein may be waived only by consent of the Debtor without any notice to other parties in interest or the Bankruptcy Court and without any formal action other than proceeding to confirm or consummate this Plan. The failure to satisfy any condition before the Confirmation Date or the Effective Date may be asserted by the Debtor as a reason not to seek Confirmation or declare an Effective Date, regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor, in its sole discretion). The failure of the Debtor, in its sole discretion, to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right shall be deemed an ongoing right, which may be asserted at any time.

### 6.12  <u>Notice of Substantial Consummation</u>.  <u>The Debtor shall file a notice upon substantial consummation of the Plan.</u>

### 6.13  <u>Effect of Nonoccurrence of Conditions</u>

If the Effective Date does not occur: (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (c) nothing contained in this Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtor or any other Person or Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Person or Entity.

## ARTICLE 7
## EXCULPATION, RELEASES, AND INJUNCTIONS

### 7.1.  <u>Exculpation</u>

The Exculpated Parties, defined as the following Persons and Entities, each in their respective capacities as such, (a) the Debtor; (b) the Reorganized Debtor; (c) the Professionals; and (d) all members, managers and officers of the Debtor or Reorganized Debtor, shall not have or incur, and are hereby released from, any claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy or liability to one another or to any Holder of any Claim or Equity Interest, or any other party- in-interest, or any of their respective Related Parties, for any act or omission originating or occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of (i) the Chapter 11 Case, (ii) the negotiation and Filing of this

Plan, (iii) the Filing of the Chapter 11 Case, (iv) the prosecution or settlement of Claims and Causes of Action, (v) the performance, assumption, assignment, termination, or rejection of Executory Contracts, (vi) the pursuit of confirmation of this Plan, (vii) the consummation of this Plan, (viii) the administration of this Plan or (ix) the distribution of property to be under this Plan, except for (a) any Claims and Causes of Action for actual fraud, willful misconduct or gross negligence as determined by Final Order of a court of competent jurisdiction and (b) any obligations that they have under or in connection with this Plan or the transactions contemplated in this Plan. Nothing herein shall prevent any Exculpated Party from asserting as a defense to any claim of actual fraud, willful misconduct or gross negligence that they reasonably relied upon the advice of counsel with respect to their duties and responsibilities under this Plan.

### 7.2.   Injunctions to Protect Estate Assets

Except as expressly otherwise provided in this Plan, or to the extent necessary to enforce the terms and conditions of this Plan, the Confirmation Order or a separate Order of the Bankruptcy Court, all Entities who have held, hold or may hold Claims against or Equity Interests in the Debtor or any owner of the Debtor shall be permanently enjoined from taking any of the following actions against the Debtor, the Debtor's Estate, the Reorganized Debtor, any owner of the Debtor or any of their property on account of any such Claims or Equity Interests: (i) commencing or continuing, in any manner or in any place, any action, Cause of Action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or Order; (iii) creating, perfecting, or enforcing any Lien; (iv) asserting a setoff (except to the extent such setoff was exercised prior to the Petition Date), right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor; and (v) commencing or continuing, in any manner or in any place, any action, Cause of Action or other proceeding that does not comply with or is inconsistent with the provisions of this Plan.

### ARTICLE 8
### MISCELLANEOUS PROVISIONS

### A.   Exhibits/Schedules

All exhibits and schedules to any forthcoming Plan Supplement are incorporated into and part of this Plan as if set forth in full herein.

### B.   Additional Documents

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. The Debtor or Reorganized Debtor, as applicable, and all Holders of Claims or Interests receiving Distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

**C.      Discharge of Subchapter V Trustee**

Upon Substantial Consummation of the Plan, the Subchapter V Trustee is discharged from and relieved of her trust and her duties and responsibilities are terminated.

**D.      Governing Law**

Except as required by the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, the rights and obligations arising under this Plan shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania.

**E.      Time**

To the extent that any time for the occurrence or happening of an event as set forth in this Plan falls on a day that is not a Business Day, the time for the next occurrence or happening of said event shall be extended to the next Business Day.

**F.      Severability**

Should any provision of this Plan be deemed unenforceable after the Effective Date, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Plan.

**G.      Revocation**

The Debtor reserves the right to revoke and withdraw this Plan prior to the entry of the Confirmation Order. If the Debtor revokes or withdraws this Plan, this Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor, any other Person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtor.

**H.      Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**I.      Inconsistency**

To the extent that this Plan conflicts with or is inconsistent with any agreement related to this Plan, the provisions of this Plan shall control.

**J.      Entire Agreement**

Except as otherwise indicated, on the Effective Date, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements,

understandings, and representations with respect to the subject matter of this Plan, all of which will have become merged and integrated into this Plan on the Effective Date.

**K.     No Admissions**

Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by any Entity with respect to any matter set forth herein.

**L.     Reservation of Rights**

Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. The filing of this Plan, any statement or provision contained herein, or the taking of any action by the Debtor with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtor, Holders of Claims, or Holders of Equity Interests before the Effective Date.

**M.     2002 Service List**

After the Effective Date, any Entities or Persons that want to continue to receive notice in these Chapter 11 Case must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002 no later than fourteen (14) days after the Effective Date of this Plan; *provided*, *however*; that the United States Trustee shall be excused from this requirement and shall remain on the Bankruptcy Rule 2002 service list. To the extent a renewed request is not timely filed with the Bankruptcy Court, the Reorganized Debtor is authorized to limit notice and not include such Entities or Persons on any post-Effective Date Bankruptcy Rule 2002 service list.

**N.     Notices**

Any pleading, notice, or other document shall be in writing and, unless otherwise provided herein, shall be served on:

| | |
|---|---|
| Debtor/Reorganized Debtor: | Love Renovations & Design LLC<br>481 Bethel Mill Road<br>Sewell, NJ  18080<br>Attn: Margaret Love |
| Counsel for Debtor: | Weir Greenblatt Pierce LLP<br>1339 Chestnut Street, Suite 500<br>Philadelphia, PA  19107<br>Attn: Jeffrey S. Cianciulli |

Subchapter V Trustee:                          Leona Mogavero, Esq.
                                               Friedman Schuman, P.C.
                                               275 Commerce Drive, Suite 210
                                               Fort Washington, PA  19034


United States Trustee:                         Office of the United States Trustee
                                               Attn:  Kevin P. Callahan, Esq.
                                               Robert N.C. Nix Federal Building
                                               900 Market Street
                                               Ste. 320
                                               Philadelphia, PA 19107


## ARTICLE 9
## <u>DEFINITIONS</u>

**9.1.**     The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.  The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.  Any term used in this Plan that is not defined herein but that is used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code. A term used in this Plan that is not defined herein but that is used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code.

**9.2.**     **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3.**   **"Administrative Expense Bar Date"** means 30 days following the Effective Date.

**9.4.**     **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5**     **Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.**      **Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.**      **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.**      **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

**9.9.**      **Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10.**      **Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.**      **Bankruptcy Court**: The United States Bankruptcy Court for the Eastern District of Pennsylvania.

**9.12.**      **Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure.

**9.13.**      **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.**      **Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Love Renovations & Design LLC is the Debtor-in-Possession.

**9.15**      **Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16.**      **Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17.**      **Confirmation**: The entry by the Bankruptcy Court of an order confirming

this Plan.

**9.18.    Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.19.    Confirmation Hearing**: The hearing to be held on December 12, 2022 to consider confirmation of the Plan.

**9.20.    Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.21.    Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22.    Debtor** and **Debtor-in-Possession**: Love Renovations & Design LLC, the debtor-in-possession in this Chapter 11 Case.

**9.23.    Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24.    Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.    Effective Date**: Shall be the date provided in the Plan.

**9.26.    Equity Interest**: An ownership interest in the Debtor.

**9.27.    Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.    Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29   IRC**: The Internal Revenue Code.

**9.30   Petition Date**:  August 1, 2022, the date the chapter 11 petition for relief was filed.

**9.31.  Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32. Priority Tax Claim**:  Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33. Reorganized Debtor**: The Debtor after the Effective Date.

**9.34. Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35. Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36 Substantial Consummation:**  shall have the meaning provided in the Bankruptcy Code at 11 U.S.C. § 1101(2).

**9.37. Trustee**:  Leona Mogavero, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.38. Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Dated: December 22, 2022                    Respectfully submitted,

                                            WEIR GREENBLATT PIERCE LLP

                                            By: */s/ Jeffrey S. Cianciulli*
                                                Jeffrey S. Cianciulli, Esq.
                                                1339 Chestnut Street,
                                                Suite 500
                                                Philadelphia, PA  19107
                                                (215) 665-8181
                                                jcianciulli@wgpllp.com
                                                *Counsel to Debtor*

**EXHIBIT A -  Liquidation Analysis**

[Pursuant to Section 1190(1)(B) of the Bankruptcy Code]

*Debtor's Estimated Liquidation Value of Assets*

**Assets**

| | |
|---|---|
| a. Cash on hand | $25.00 |
| b  Office furniture & equipment | $1,000 |
| c. Building & Land | $500,000 |

*Total Assets at Liquidation Value*                                    $501,025

**Less:**

Secured creditors' recoveries                          $445,450.48

**Less:**

Chapter 7 trustee fees and expenses                    $25,000

**Less:**

Chapter 11 Administrative Expenses                     $30,000

   (1) Balance for unsecured claims - $574.52

   (2) Total dollar amount of unsecured claims - $77,694.00

*Percentage of Claims Which Unsecured Creditors Would*          1%
*Receive Or Retain in a Chapter 7 Liquidation:*

*Percentage of Claims Which Unsecured Creditors Will*          32%
*Receive or Retain under the Plan:*